IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NOAH DABE CLARK,

                        Plaintiff,                          OPINION and ORDER

        v.
                                                            22-cv-372-jdp
AUSTIN TUCKER,

                        Defendant.

---

Plaintiff Noah Clark is proceeding without counsel on a claim that Austin Tucker, a Washburn County Sheriff's deputy, used excessive force when arresting Clark in violation of his Fourth Amendment rights. Dkt. 11. Tucker has not appeared or filed anything in this case, so the Clerk of Court entered his default. Dkt. 20. The court held an evidentiary hearing on Clark's motion for entry of default judgment on January 30, 2024, at which Clark submitted medical records and testified about his injuries and the impact they have had on his life.

For the reasons explained below, I conclude that Clark is entitled to damages for lost wages for the year and a half between his injury and his incarceration on an unrelated charge and for pain and suffering. I will grant Clark's motion for a default judgment and award him a total of $399,720.35 in damages against Tucker.

ANALYSIS

The court will address the following issues in this opinion: (1) jurisdiction and service; (2) liability; (3) damages; and (4) the Servicemember Civil Relief Act.

**A. Jurisdiction and service**

The court has subject matter jurisdiction under 28 U.S.C. § 1331 over Clark's Fourth Amendment excessive force claim against Tucker. The United States Marshalls Service provided a signed waiver of service of summons from Tucker. Dkt. 13. The events that gave rise to Clark's claim occurred in this district and related to Tucker's work as a Washburn County Sheriff's deputy, so venue is proper under 28 U.S. Code § 1391(b)(2) and the court may exercise personal jurisdiction over Tucker.

**B. Liability**

Because Tucker has defaulted, I must accept all the allegations in Clark's complaint as true, except the allegations related to damages. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020). Clark alleges that Tucker fired beanbags at him from a dangerously close range when he did not comply with commands to roll over onto his stomach. Dkt. 10. Clark alleges that Tucker continued firing beanbags at him even after he had been knocked onto his back from the first beanbag shot into his chest. Tucker shot three more beanbags, the last of which ruptured when it hit Clark's calf, penetrating his leg. Clark had to have surgery to treat the wound and has lasting muscle and nerve damage that requires him to walk with a cane. At screening, I concluded that Clark's allegations state a claim against Tucker for using excessive force in violation of the Fourth Amendment, Dkt. 11, so Tucker's default established liability for Clark's claim.

**C. Damages**

A plaintiff seeking a default judgment must establish that he is entitled to the damages he has requested. *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016). This means that the plaintiff must provide evidence that shows that there was a

causal connection between the defendant's conduct and the requested damages as well as evidence that allows the court "to ascertain the amount of damages with reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). In this case, Clark seeks damages for medical expenses, lost wages (both past and future), pain and suffering (both past and future), and court costs related to the incident in which Tucker injured him.

At the hearing, Clark testified that the Washburn County deputies were dispatched on July 6, 2019 to investigate Clark because a neighbor who he interacted with earlier that day while she was intoxicated alleged that Clark raped her. Clark himself was inebriated and asleep when the deputies came into the cabin he was in, and he cursed at him when they woke him up. Tucker shot the beanbags at Clark, and the deputies removed him from the cabin. The deputies escorted Clark to the closest emergency room, where medical providers gave him pain medication, cleaned his golf-ball sized wound, and closed it with stitches. (Clark provided photos of the injury at the hearing. Dkt. 31-1.) The deputies then took Clark to jail, but the next morning the wound was bleeding, so he was taken to the emergency room at Indianhead Medical Center. The medical providers there removed some of the stiches to treat Clark's pain, which they believed was caused by an accumulation of blood (hematoma) under the skin adjacent to the wound. Dkt. 31-4 (Indianhead Medical Center Medical Records).

Clark testified that he was then transferred to Marshfield Medical Center for surgery to remove the hematoma. Clark was admitted to the hospital on July 9 and discharged on July 12. A photo that Clark provided at the hearing shows that the incision for the surgery extends from just below his knee to about halfway down his calf. Dkt. 31-1. Medical providers removed skin along the edge of the wound, dead muscle tissue from the original injury site, and the hematoma. Dkt. 31-5. Clark testified that after he was released from the hospital, he was on

crutches and had to use a wound vac for several months to help his leg heal. Clark explained that the wound vac was a large device with a pump and a hose that connected to the bandage around his leg to help draw blood out of the healing wound. Clark testified that he could wear the wound vac, so it didn't entirely prevent him from walking, but he said that it was painful and if he moved too much it could displace the hose and he would need to go to his medical provider to get it placed properly. Clark also testified that he went to physical therapy for several hours a week at first.

Clark testified that all the charges for the July 6 incident were dropped except a charge for making threats to law enforcement, which Clark admits that he did during his arrest. In January 2021, Clark was incarcerated and served a three-year sentence for an unrelated conviction for events that had occurred in May 2019, a month or so before the beanbag incident. Clark was released from prison in January 2024 and is currently seeing a psychologist, a psychiatrist, and doctors for physical therapy and pain management. Clark testified that the injury caused lasting nerve pain and muscle damage that requires him to walk with a cane. He currently takes medication for his nerve pain as well as several medications for depression, anxiety, and PTSD, which he believes were caused by the trauma of being shot by Tucker. Clark also testified that he has nightmares about the incident and anxiety about his self-image and financial prospects living with this disability.

Clark explained that prior to his injury, he worked hourly installing drywall. Since his injury, Clark has not been able to do physical labor, including drywalling. Clark also testified that he lives on a farm where his family had previously raised cattle. Currently, Clark isn't farming at all, and he testified that the farm is falling into disrepair because he isn't physically capable of doing the work needed to maintain things.

4

Based on the evidence Clark provided at the hearing, I conclude that Clark is entitled to damages for his unpaid medical expenses, past lost wages, and pain and suffering. But, for the reasons explained at the hearing, I will not award Clark the $850 in court costs related to the incident. Clark admits that he threatened the deputies and the fees stemming from his charge for those threats are not damages caused by Tucker's excessive use of force. I will address each of the other types of damages separately.

As for medical expenses, Clark provided statements showing that he owes $619.15 to Indianhead Medical Center and $501.20 to Marshfield Health. Dkt. 31-2 & Dkt. 31-3. Clark incurred these expenses for treatment for injuries caused by Tucker's excessive use of force, so I will award Clark a total of $1,120.35 in medical expenses.

As for lost wages, Clark requests $76,800.00, which he says is based on calculating the amount he would make if he received minimum wage until he reached retirement age. As I explained at the hearing, even though Clark has presented evidence that he cannot work in the same capacity that he did prior to his injury, I would need additional evidence (and probably expert testimony) to conclude that he cannot do any work going forward. But I conclude that Clark is entitled to past lost wages for the period between his injury in July 2019 and his incarceration at the end of January 2021. Clark testified that prior to July 2019 he was working hourly for roughly 30 hours per week making $20 per hour. If Clark had continued to work at those rates for the year and a half prior to his incarceration he would have earned $48,600. So, I will award Clark $48,600 in past lost wages for the time that he was unable to work while recovering from his injury.

As for pain and suffering, Clark testified that he experienced intense physical pain when Tucker shot him with the beanbag. Clark also testified that he continues to suffer physical pain

and needs ongoing mental health treatment for nightmares, PTSD, anxiety, and depression he suffers from because of the shooting. Clark described his nerve pain as a burning sensation that feels like his leg is on fire from his knee down. If he doesn't have the painful burning sensation, Clark experiences numbness in which he loses sensation in his leg and has difficulty manipulating his toes. Clark's testimony about the pain he experienced from the beanbag bursting into his leg is sufficient to establish that he is entitled to damages for past pain and suffering. The photos that Clark presented show that he experienced a gruesome injury. And after his surgery, Clark spent several months with a wound vac attached to his leg, which he testified was a painful recovery process. I find that $250,000 is an appropriate award for Clark's past pain and suffering.

I also conclude that Clark is entitled to damages for future pain and suffering for his ongoing nerve pain. But Clark is not entitled to future damages for emotional distress or future expenses for his mental health treatment. As a lay witness, Clark may offer opinions rationally based on his own observations. Fed. R. Evid. 701. But he may not offer expert testimony, Fed. R. Evid. 702, and a lay witness is not qualified to testify about the causes of various medical symptoms and conditions, see *Myers v. Illinois Central R. Co.*, 629 F.3d 639, 643–44 (7th Cir. 2010); *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001). Clark's statements that the incident caused his PTSD and anxiety go beyond the scope of lay witness testimony. Clark testified that he had been treated for mental illness before the incident. Expert testimony would be necessary to establish the degree to which his current mental health problems were caused by the incident.

In contrast, Clark's explanation of his continuing nerve pain is within the scope of lay testimony. It is obvious from the photos of the wound and surgical incision that the damage

from the beanbag goes beyond the superficial layers of skin into the deeper tissue, which a lay person would understand contains nerves. At this point, Clark's nerve pain has lasted for more than four years; it did not improve when the wound in the skin and muscle closed and healed over. And the only treatment that Clark has received for his nerve damage is pain management, which is consistent with his opinion that his nerve damage is irreversible. I conclude that Clark has shown that his ongoing nerve pain caused by Tucker's excessive use of force will last for the foreseeable future and will award Clark $100,000 for future pain and suffering.

**D.  Servicemember Civil Relief Act**

At the hearing, I informed Clark that he needed to provide information necessary to satisfy the Servicemembers Civil Relief Act (SCRA) and instructed him how to find the website to look up whether Tucker is active-duty military. After the hearing, Clark filed a statement saying that he tried using the website and that he is unable to determine servicemember status without Tucker's date of birth or social security number. Dkt. 33.

The SCRA requires a plaintiff seeking a default judgment to provide an affidavit that either provides evidence of whether the defendant is in military service or, "if the plaintiff is unable to determine whether or not the defendant is in military service," that states "that the plaintiff is unable to determine whether or not the defendant is in military service." 50 U.S.C. § 3931(b)(1). If the plaintiff cannot determine a defendant's military service status, courts have discretion to impose a bond to indemnify the defendant if he is later found to be in military service. 50 U.S.C. § 3931(b)(3). Clark's letter states that Tucker is currently employed by the Spooner Police Department, so I have no reason to believe that Tucker is currently serving in the military. Based on Clark's testimony at the hearing, imposing a bond would prevent him from being able to recover the judgment, so I will not require a bond.

7

ORDER

IT IS ORDERED that plaintiff Noah Clark's motion for a default judgment, Dkt. 26, is GRANTED in part. The clerk of court is directed to enter a judgment for $399,720.35 against defendant Austin Tucker.

Entered May 3, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge